**Jay A. GARNIER, Plaintiff,**

**v.**

**J.C. PENNEY COMPANY, INC.; J.C. Penney Company, Inc., Headquarters Relocation Severance Pay Program for General Management Associates; William R. Howell; Richard T. Erickson, John A. Wells; and Terry S. Prindiville, Defendants.**

**No. 91 Civ. 5563 (RWS).**

United States District Court, S.D. New York.

Sept. 1, 1994.

---

Jay A. Garnier, plaintiff pro se.

J.C. Penney Co., Inc., Legal Dept., Plano, TX (John B. Rizo, Sr., of counsel) and Kramer, Levin, Nessen, Kamin & Frankel, New York City (Seth G. Rowland, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Defendants J.C. Penney Company, Inc. ("Penney"); J.C. Penney Company, Inc. Headquarters Relocation Severance Pay Program for General Management Associates (the "Plan"); William R. Howell; Richard T. Erickson; John A. Wells; and Terry S. Prindiville have moved for an order, pursuant to Rule 56, Fed.R.Civ.P., granting them summary judgment and dismissing the complaint in this matter (the "Complaint"). For the following reasons, this motion is granted in part and denied in part.

### Parties

The parties, facts, and prior proceedings in this matter were fully discussed in a prior opinion of this Court, familiarity with which is assumed. See Garnier v. J.C. Penney Co., 91 Civ. 5563, 1993 WL 42233, 1993 U.S.Dist. LEXIS 1735 (S.D.N.Y. Feb. 16, 1993) (the "1993 Opinion").

Plaintiff Jay A. Garnier was an employee of defendant J.C. Penney Co., Inc. at its offices in New York, New York, from November 1982, until May 1990. Defendant Penney is a Delaware Corporation with its principal place of business in Plano, Texas, conducting a retail merchandising business. Defendant the Plan is an employee welfare plan within the definitions of the Employee Retirement Income Security Act of 1974, as Amended, 29 U.S.C. §§ 1001–1461 ("ERISA"). The individual defendants are William R. Howell, Chairman of the Board and Chief Executive, Richard T. Erickson, Director of Corporate Personnel, John A. Wells, Senior Vice President, and Terry S. Prindiville, Executive Vice President, respectively, of Penney.

### Background

Garnier was employed by Penney in the real estate development group ("JCP Realty"), a unit of the Real Estate and Construction Services Department, from November 1982 until May 1990. On April 29, 1987, Garnier was given notice (the "Relocation Announcement") that Penney intended to move its corporate headquarters from New York City to Dallas, Texas (the "Relocation"). As part of the Relocation, Penney offered Garnier certain compensation and benefits, including participation in the Plan.

By its terms, the Plan covered employees who remained in their positions at satisfactory job performance levels until relocation of their departments was completed and who were terminated because of the Relocation.

Garnier alleges that on April 29 and 30, 1987, the Defendants extended to him an offer to enter into a unilateral contract (the "Contract"), the terms of which were: additional compensation, assistance in finding new employment, and medical and other incidental benefits if he remained with Penney until the actual relocation date of his department; that notification to Penney of a decision not to relocate would not adversely impact future salary increases and similar decisions; and that the Relocation would be completed by the Fall of 1988, unless there were uncontrollable delays. Garnier alleges that his performance constituted acceptance of, and reliance on, the terms of the Contract.

Within weeks after the Relocation Announcement, Garnier was advised that JCP Real Estate might not be relocated to Dallas as part of the Relocation (the "Non-relocation Announcement"). While the Defendants claim that this announcement was clear and unequivocal, and included the caveat that the JCP Realty associates should disregard all information provided to them regarding the Relocation, Garnier asserts that the non-relocation of JCP realty was uncertain and was conditional on unstated future events. In October 1987, Garnier alleges that William Cristman, a Penney employee under the supervision and direction of Erickson, delivered to him a statement (the "Benefit Statement") dated September 14, 1987, of estimated benefits from the Plan that projected Garnier's termination or relocation date at February 1, 1988.

On July 28, 1988, after the Relocation was complete, Garnier submitted a request for benefits under the Plan to defendant Wells, asserting that he had been constructively discharged, and thus was entitled to benefits under the Plan. The request was denied on August 29, 1988. The denial was affirmed by defendant Erickson on November 8, 1988. Garnier remained employed at J.C. Penney until May 1990, at which time he voluntarily left Penney's employment.

### Prior Proceedings

Garnier filed his complaint on August 16, 1991, and filed a more definite statement of his claims on March 30, 1992. On February 16, 1993, the Honorable Pierre N. Leval dismissed counts one, two, and four of the Complaint. On April 14, 1994, Garnier moved to compel discovery, and on April 15, 1994, the Defendants moved for summary judgment. At the May 4, 1994 oral argument on Penney's motion for summary judgment, the Court stayed consideration of the motion to permit Garnier to conduct further discovery. In response to a letter from the defendants, the summary judgment motion was restored to the calendar on July 11, 1994, and argument was held on the motion on July 20, 1994, at which time the motion was considered fully submitted.

### Discussion

### Standards for Motions for Summary Judgment

A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). The moving party bears the burden of proving that no genuine issue of material fact exists. *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988); *In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.*, 851 F.Supp. 556 (S.D.N.Y. 1994); *Pittston Warehouse Corp. v. American Motorists Ins. Co.*, 715 F.Supp. 1221, 1224 (S.D.N.Y.1989), *aff'd*, 954 F.2d 62 (2d Cir.1992).

The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady*, 863 F.2d at 210; *see also Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983); *In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.*, 851 F.Supp. 556 (S.D.N.Y.1994); *Swan Brewery Co. v. United States Trust Co.*, 832 F.Supp. 714, 717 (S.D.N.Y.1993).

However, the remedy of summary judgment is viewed "as an integral part of the Federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted). Once the moving party has met its burden of coming forward with evidence to show that no material fact exists for trial, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.*, 851 F.Supp. 556 (S.D.N.Y.1994).

### There is No Need for Additional Discovery Prior to Deciding this Motion

At the May 4, 1994 argument on Penney's motion for summary judgment, the Court acceded to Garnier's request to stay the motion to enable Garnier to conduct additional discovery. A second argument was held on this motion on June 20, 1994, at which time Garnier indicated that he desired still more time for discovery prior to consideration of the motion.

Rule 56, Fed.R.Civ.P., which governs motions for summary judgment, provides in relevant part that:

(f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the appli-

cation for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

■ The decision to grant or deny more time to conduct discovery pursuant to Rule 56(f) is left to the district court's discretion. *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 925 (2d Cir. 1985).

■ As detailed below, Garnier's own admissions indicate that Count III of the Complaint is preempted by ERISA; further discovery is therefore unwarranted on this issue. Count V of the Complaint will not be dismissed at this time, so it is appropriate to decide this motion without awaiting further discovery.

### Count III is Preempted by ERISA

In Count Three, Garnier alleges breach of the Contract, contending that he accepted J.C. Penney's offer of additional compensation, assistance in finding new employment, and medical and other incidental benefits promised to him if he remained with J.C. Penney until the actual relocation date of his department. Plaintiff contends that he did remain with J.C. Penney until the relocation of his department, which, according to the complaint, was completed by July 1988.

The 1993 Opinion states with regard to this claim that:

It may be that defendants could show at trial, or on a motion for summary judgment, that plaintiff's contract claim relates to the Plan. However, Count Three of the pleading contains no reference to the Plan, and, viewed in the light most favorable to plaintiff, the count alleges a contract for benefits apart from the Plan. Thus, on this motion to dismiss, I cannot find that such a claim would be preempted by ERISA.

■ ERISA expressly preempts all state laws that "relate to" employee benefit plans covered by ERISA. *See* 29 U.S.C. § 1144(a); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–49, 107 S.Ct. 1549, 1552–54, 95 L.Ed.2d 39 (1987). A law "relates to" an

employee benefit plan "in the normal sense of the phrase, if it has a connection with or reference to such plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

The Second Circuit has noted recently, with regard to the preemptive reach of ERISA:

One of ERISA's main objectives was to eliminate state regulation of employee benefit plans. To accomplish this, Congress enacted an express preemption clause that is "deliberately expansive." ... Preemption thus applies even where a state law was not specifically designed to regulate the terms and conditions of employee benefit plans or does not relate to those subjects covered by ERISA, such as reporting, disclosure, and fiduciary responsibilities. Indeed, even where a state law has no express link to an employee benefit plan, it can be preempted " 'insofar as' the law applies to benefit plans in particular cases." ERISA preemption is not without limitations, however. The Supreme Court has recognized that ERISA preemption will not apply to state laws that "affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."

*NYSA–ILA Med. & Clinical Servs. Fund v. Axelrod,* 27 F.3d 823 (2d Cir.1994) (citations omitted).

*NYSA–ILA* involved a claim that ERISA preempted New York Public Health Law § 2807–d to the extent that it taxed payments for health care benefits received by two medical centers operated by an ERISA welfare benefit fund. The challenged tax was imposed on payments and contributions which were intended to pay for fund participants' medical benefits.

The Circuit Court concluded that the statute "related to" the fund because it depleted the assets earmarked for the provision of fund benefits and, as a result, would cause the fund to the reduce benefits provided and/or to alter the funding mechanisms for providing those benefits.

Following the 1993 Opinion, Garnier gave deposition testimony in which he alleged that the Plan "is a funding mechanism which describes some of" the benefits which he was allegedly promised under in the Contract. (Def.Ex. K at 149.) In addition, ¶ 4 of the Defendants' Statement of Undisputed Facts submitted pursuant to Local Rule 3(g) of this Court states that "[t]he Plan is the funding mechanism for some of the obligations that are part of the unilateral contract plaintiff claims." This claim is not refuted, and thus must be deemed admitted by Garnier. Rule 3(g) of the Joint Rules for Southern and Eastern Districts of New York ("All material facts set forth in the statement [of material facts as to which the moving party contends there is no genuine issue to be tried] required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *United States v. Rivieccio,* 846 F.Supp. 1079, 1083 (E.D.N.Y.1994); *Suttell v. Manufacturers Hanover Trust Co.,* 793 F.Supp. 70, 71 n. 2 (S.D.N.Y.1992).

Garnier's Contract Claim seeks funds earmarked for the Plan. Count III therefore "relates to" the Plan, and is preempted by ERISA.

### Count V is Not Dismissed

In Count Five, Garnier alleges tortious deceit, in that fraudulent statements were communicated under the Defendants' direction, promising him benefits under the Plan and from other sources. Garnier alleges that defendants knew these statements to be false at the time they were made, and that they were made to induce him to stay in Penney's employ. Garnier alleges that in reliance on the Defendants' statements, including those in the Benefit Statement, he remained in Penney's employ.

In the 1993 Opinion, the Court held that Count V stated a claim for fraudulent inducement to remain in Penney's employ under the Second Circuit's ruling in *Stewart v. Jackson & Nash,* 976 F.2d 86 (2d Cir.1992). In *Stewart,* the plaintiff alleged that she had taken and remained in a job with a law firm in justifiable reliance on allegedly false statements by the defendants that she would be made head of a newly formed environmental law department.

The Second Circuit reversed the dismissal of the plaintiff's fraud claims because, according to the complaint, the misrepresentations had caused the plaintiff to remain two years at the firm without working in her chosen specialty, which resulted in damage to her career development and opportunities.

The Defendants make two arguments for dismissing Garnier's fraud claim. First, they point to the fact that Garnier admits that he received the Non–Relocation Announcement, and therefore could not have relied on the allegedly fraudulent statements. However, Garnier claims that the Announcement was ambiguous and made the non-relocation of JCP Realty contingent on certain future events, and that the Benefit Statement fraudulently induced him to remain in Penney's employ.

Secondly, the Defendants claim that Garnier has not alleged damage since he remained with J.C. Penney for approximately two years following the Relocation, and thereafter left for a higher paying job. Garnier alleges that his having remained with JCP Realty while the bulk of the Company relocated to Dallas reduced his career opportunities, since after the Relocation he was employed in "a small and isolated headquarters position." If Penney fraudulently induced Garnier to remain in their employ by falsely indicating that he would receive additional benefits if he stayed, Garnier has articulated a theory under which damages may be appropriate under the holding in *Stewart.* The Defendants' motion for summary judgment is therefore denied with respect to Count V.

### Conclusion

For the foregoing reasons, the Defendants' motion for summary judgment is granted in part and denied in part.

It is so ordered.