**Patricia COLE, Plaintiff,**

v.

**KOBS & DRAFT ADVERTISING, INC., Defendant.**

**No. 93 Civ. 3239 (SWK).**

United States District Court, S.D. New York.

April 9, 1996.

Marx & Marx by Robert N. Marx, Jean Simonoff Marx, Atlanta, Georgia, for Plaintiff.

Camhy Karlinsky & Stein by John B. Grant, New York City, for Defendant.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this action for fraudulent inducement, defendant Kobs & Draft Advertising, Inc. ("Kobs") moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment

dismissing the complaint. For the reasons outlined below, Kobs's motion is denied.

## BACKGROUND [1]

Kobs is a company in the business of direct market advertising, which involves communicating with the general public for the purpose of eliciting consumer responses. In June 1991, Kobs hired plaintiff Patricia Cole ("Cole") to work in its New York City office as an account supervisor overseeing its business with a major client, Fidelity Investments ("Fidelity").

At the time of her hiring, Cole received and signed a "Standard Form of Employment Agreement," which provided that her employment "shall remain at all times terminable at will by [Kobs]." *See* Standard Form of Employment Agreement, annexed to the Affidavit of John B. Grant, Jr., sworn to on Dec. 14, 1995 (the "Grant Aff."), as Exh. "D." The Standard Form of Employment Agreement also provided that Cole would not solicit business from any of Kobs's clients for at least one year after leaving its employ. *Id.* As part of her orientation, Cole received an "Employee Handbook," which stated, in part:

EMPLOYMENT AT WILL

[Kobs] has no express or implied contract with its employees concerning the terms and conditions of employment. [Kobs] and its employees each have the right to terminate the employment relationship at any time, with or without cause, and with or without notice. No officer or employee of [Kobs] has the authority to alter or amend this express policy except the Chairman, who may do so only in writing. Any earlier oral or written policy or statements regarding employment termination that may have been made are void and superseded.

*See* Employee Handbook, annexed to the Grant Aff. as Exh. "E," at 1.

In October 1992, Cole was interviewed for a position at J. Walter Thompson Direct ("JWT Direct"), a Kobs competitor in the direct market advertising business. After several interviews, JWT Direct offered Cole the position of vice-president and management supervisor with a salary of $98,000 per year, an amount larger than the annual salary of $82,000 she received at Kobs. According to Cole, the position offered by JWT Direct provided an opportunity to accelerate the development of her career in part because the vice-president title would be a significant stepping stone for advancement in the industry.

On October 23, 1992, Cole telephoned her supervisor, the head of Kobs's New York City office, Lynn Fantom ("Fantom"), to inform her that she had received an offer from JWT Direct and intended to communicate her acceptance. Fantom asked Cole to delay her decision until they could meet, but Cole decided to tender her written resignation immediately in order to provide Kobs with two-weeks notice of her departure. *See* Letter from Cole to Fantom, dated Oct. 23, 1992, annexed to the Grant Aff. as Exh. "G."

Nonetheless, on October 29, 1992, Cole met with Fantom to discuss her plans to leave Kobs. At that meeting, Cole stated that she would remain at Kobs if the firm would agree to several conditions, including a salary increase, a two-year employment contract, promotions to the positions of vice-president and account director, a commission for her client billings and a change in the reporting structure such that Cole would report directly to Fantom. *See* Affidavit of Lynn Fantom, sworn to on Dec. 13, 1995, at ¶ 6. The following day, Fantom again met with Cole and offered her an increase in salary to $140,000 per year, a review in December 1992 to consider a promotion to vice-president, a promotion to the position of account director in February 1993 and a guarantee that Cole would report directly to Fantom. *Id.* at ¶ 7. According to Cole, Fantom encouraged her to accept this counteroffer, informing her that she would have "a great future here" if she chose to remain. Complaint at ¶ 31.

On November 2, 1992, Cole again met with Fantom and made an additional request that Kobs agree not to terminate her employment

---

1. Except where otherwise indicated, the following statement of facts is derived from the parties' statements of undisputed facts, submitted pursuant to Local Civil Rule 3(g).

without providing three-months notice. Fantom refused this request and stated that Kobs's right of termination had to be based on "the same terms that everybody else has. We can fire you whenever we want." *See* Deposition of Patricia Cole, taken on Oct. 19, 1994, annexed to the Grant Aff. as Exh. "C" ("Cole Dep."), at 194. Despite Fantom's refusal to meet this additional condition, Cole accepted Kobs's offer and rejected the offer made by JWT Direct.

According to Cole, Kobs intended neither to continue to employ her nor to promote her in February 1993 to the position of account director despite Fantom's promises and the assurance that she would have "a great future" at Kobs. Rather, Cole alleges that Fantom's statements were part of a larger scheme to transfer the Fidelity account to a new employee, Greg DiLorenzo ("DiLorenzo"), before terminating her employment in order to prevent the loss of Fidelity's business. Cole claims that Kobs intentionally scheduled meetings with Fidelity when she was unavailable so that DiLorenzo could establish a relationship with that client, assigned her to a new client in order to distract her from the Fidelity account, issued disingenuous negative evaluations of her work performance as a pretext for its actions, and ultimately, on February 4, 1993, terminated her employment.

On May 13, 1993, Cole commenced the present action, alleging fraudulent inducement in connection with Fantom's statements that she would be promoted to account director and that she would have "a great future" if she remained at Kobs rather than accepting JWT Direct's employment offer. Cole claims that Kobs's scheme undermined her relationship with Fidelity, thereby preventing her from luring Fidelity to a new employer or to an agency of her own upon the expiration of her one-year non-competition agreement with Kobs. Cole alleges further that Kobs tarnished her reputation in the direct market advertising industry generally, thereby preventing her from obtaining similar employment after her termination and damaging her career.

Kobs now moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment dismissing the complaint on the grounds that (1) Cole cannot prove justifiable reliance because she knew that she could be terminated at any time; (2) the fraud claim is merely a dressed-up contract claim barred by New York's employment-at-will doctrine; and (3) the damages claim is too speculative to support a claim for fraud.

## DISCUSSION

### I. Standard of Law

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence in support of the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. Once the nonmoving party succeeds in meeting the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy his or her ultimate burden under Rule 56. *See id.* at 330 n. 2, 106 S.Ct. at 2556 n. 2 (Brennan, J., dissenting). In addressing a motion for summary judgment, the Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. New York,* 762 F.2d 243, 249 (2d Cir.1985).

## II. Employment–At–Will

Kobs's first two bases for dismissal rely on New York's employment-at-will doctrine. In particular, Kobs contends that (1) Cole could not reasonably rely on Fantom's representations because she knew that her employment could be terminated at any time; and (2) in any event, Kobs cannot be held liable for injuries to Cole caused by her termination under New York law interpreting the employment-at-will doctrine.

Under New York law, "absent an agreement establishing a fixed duration, an employment relationship is presumed to be hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, 920 (1987) (citation omitted). An employer may discharge an at-will employee at any time with or without cause. *Allen v. City of Yonkers,* 803 F.Supp. 679, 709 (S.D.N.Y.1992) (citing *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1020– 21 (2d Cir.1985)); *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 235, 448 N.E.2d 86, 89 (1983). New York courts routinely reject attempts by employees to circumvent an employer's termination right merely by alleging claims sounding in tort. *See, e.g., Cartelli v. Lanier Worldwide, Inc.,* 872 F.Supp. 1253, 1256 n. 2 (S.D.N.Y.1995) (stating that allowing an employment dispute to proceed as an intentional infliction of emotional distress claim would "mak[e] demotion (and even more so dismissal) an extremely high risk step for any employer to take"); *Ingle v. Glamore Motor Sales, Inc.,* 73 N.Y.2d 183, 538 N.Y.S.2d 771, 773–74, 535 N.E.2d 1311, 1312–14 (1989) (stating that New York courts "decline[ ] to allow the use of substitute nomenclature or causes, such as prima facie tort or intentional infliction of emotional distress, to bootstrap the threshold deficiency in a wrongful discharge claim") (citations omitted).

In the present case, the parties do not dispute that no employment contract existed between Kobs and Cole. Kobs characterizes Cole's claim as another attempt to evade the employment-at-will doctrine by recasting her wrongful discharge claim as a claim for fraudulent inducement. Kobs relies principally on *Garwood v. Sheen & Shine, Inc.,* 175 A.D.2d 569, 572 N.Y.S.2d 237, 237–38 (4th Dep't.1991), where a New York court dismissed a fraud claim brought by a former employee of the defendant. In *Garwood,* the plaintiff had been employed as a bookkeeper with the defendant for approximately one year when he received an offer from a local town at a higher salary. *Id.,* 572 N.Y.S.2d at 237. The plaintiff refused the superior offer, relying on an assurance by a representative of the defendant that the company "would continue the plaintiff as an employee as long as plaintiff performed his job in the same manner as he had previously done so." *Id.* Shortly thereafter, plaintiff's employment was terminated and he commenced an action for fraud based on his former firm's unfulfilled promise of continued employment. *Id.* In rejecting plaintiff's claim, the court held that "the only fraud alleged relates to the breach of the employment contract" and the company retained its right to terminate plaintiff's employment under the employment-at-will doctrine. *Id.,* 572 N.Y.S.2d at 237–38.

Unlike in *Garwood,* however, plaintiff in the case at bar does not seek damages arising out of the termination itself.[2] Rather, Cole alleges that Kobs made phantom promises of a promotion and sustained employment as part of a fraudulent scheme to induce her to remain at Kobs long enough to maneuver a new employee into position to handle the Fidelity account. Cole, unlike the plaintiff in *Garwood,* seeks damages related to Kobs's allegedly successful effort at sabotaging her relationship with Fidelity and tainting her reputation within the direct market advertising industry, rather than for any damages caused by the termination decision itself.

---

**2.** For this same reason, defendant's reliance on *Nice v. Combustion Eng'g, Inc.,* 193 A.D.2d 1088, 599 N.Y.S.2d 205 (4th Dep't.1993), and *Dalton v. Union Bank of Switzerland,* 134 A.D.2d 174, 520 N.Y.S.2d 764 (1st Dep't.1987), is likewise misplaced. In these cases, plaintiffs' fraud claims failed because they sought damages resulting directly from their demotion and termination, respectively, and thus were barred by the employment-at-will doctrine.

In *Stewart v. Jackson & Nash,* 976 F.2d 86, 88 (2d Cir.1992), the Second Circuit pointed out that this distinction is crucial in assessing whether a plaintiff has an actionable claim or is barred by the employment-at-will doctrine. In *Stewart,* the plaintiff was employed as an attorney at a law firm when she received an offer from another firm to leave her position and help establish a new environmental law practice. *Id.* at 87. The soliciting firm represented to the plaintiff that the firm recently had secured a large environmental law client, the firm expected to establish a separate environmental law department, and that plaintiff would be slated to head the new department. *Id.* The plaintiff accepted the offer, but the promises about the environmental work were never fulfilled after two years of employment with the defendant firm. *Id.* After the plaintiff was fired, she brought an action for fraud based on the defendant's alleged misrepresentations that lured her from her old job.

The Second Circuit reversed the district court's decision to dismiss the plaintiff's fraud claim. The Court distinguished *Murphy v. American Home Prods. Corp.,* 461 N.Y.S.2d at 235, 237, where an employee sought damages for emotional distress caused by his termination, on the ground that the plaintiff's tort allegations in that case "spring[ ] ... directly from the termination itself" and thus "are a transparent attempt to restate the forbidden contractual challenge in the guise of tort." *Stewart v. Jackson & Nash,* 976 F.2d at 88. In contrast, plaintiff's injuries in *Stewart* were quite different from the injuries suffered in *Murphy.* As the Court explained:

> Stewart's alleged injuries, on the other hand, commenced well before her termination and were, in several important respects, unrelated to it. According to the complaint, [defendant's] misrepresentations caused Stewart, a budding environmental lawyer, to leave a firm with an environmental practice and spend two years at one in which she was largely unable to work in her chosen specialty. The resulting damage to her career development was independent of her later termination from [defendant] and began while she was still at the firm. As stated in her

complaint, Stewart's "career objective—continuing to specialize in environmental law—was thwarted and grossly undermined *during* her employment with [defendant]."

*Id.* (emphasis in original). As the damages sought were unrelated to the termination event itself, plaintiff's claim was not barred by New York's employment-at-will doctrine.

Similarly, in *Garnier v. J.C. Penney Co.,* 863 F.Supp. 139, 143 (S.D.N.Y.1994), a plaintiff sued his former employer for fraudulent statements made during his employment that caused him to remain at the firm for several years. In *Garnier,* the defendant company decided to relocate out-of-state, but promised the plaintiff that he would receive certain financial benefits in exchange for remaining with the firm until the relocation. *Id.* at 140. The plaintiff accepted the company's offer, but it later reneged after deciding not to transfer the plaintiff's department. *Id.* at 140–41. The plaintiff later voluntarily left the defendant's employ and commenced an action for fraudulent inducement, alleging that the company's promises of benefits were knowingly false when made and designed to cause him to remain at the firm. *Id.* at 143. Relying on *Stewart,* the Court held that the plaintiff properly stated a cause of action for fraudulent inducement because he "allege[d] that his having remained with [the defendant] while the bulk of the Company relocated to Dallas reduced his career opportunities, since after the Relocation he was employed in 'a small and isolated headquarters position.'" *Id.* As in *Stewart,* the plaintiff's fraud claim was actionable because the damages sought were unrelated to any termination decision, and instead were based on the career damage that occurred while still employed by the defendant.

In another case applicable to the present case, *Navaretta v. Group Health Inc.,* 191 A.D.2d 953, 595 N.Y.S.2d 839, 840 (3rd Dep't. 1993), the plaintiff considered leaving her job and joining the defendant company, but was concerned that she would fail certain required training courses and therefore lose the new position. Relying on assurances that the training tests were "not that impor-

tant," the plaintiff accepted the new job, but shortly thereafter was fired when she failed several of the exams. *Id.* Rejecting the defendant's contention that her fraud claim was barred by the employment-at-will doctrine, the court emphasized that the plaintiff did not seek redress for wrongful termination, but rather "for loss of benefits and salary connected with her *former* employment" caused by the fraudulent misrepresentations. *Id.,* 595 N.Y.S.2d at 841 (emphasis in original).

■ Here, as in *Stewart, Garnier* and *Navaretta,* plaintiff does not seek to hold her former employer liable for damages arising out of her termination, and therefore the employment-at-will doctrine is not implicated. Rather, Cole is seeking damages for injuries that occurred while she was still at Kobs—namely, the soured relationship with Fidelity and the injury to her reputation—and that arose independently of Kobs's decision to fire her. Cole can recover on her claim if she establishes at trial that Fantom knowingly made misrepresentations of present facts to induce her to remain at Kobs, and that this fraudulent conduct caused damages independent of any injury stemming from her termination.

### III. Damages

Kobs also moves for summary judgment dismissing the fraud claim on the grounds that Cole's alleged damages are without any factual support and were not caused by any alleged misrepresentation. After consideration of all relevant materials submitted in connection with this motion, the Court finds that there are substantial issues of fact requiring jury resolution.

With respect to the alleged injury to Cole's relationship with Fidelity, for example, Kobs strenuously argues that Cole's admitted decision not to contact her former client after her termination prevents her from establishing any resulting damages. *See* Cole Dep. at 288–89. Kobs also points out that Cole's written agreement to avoid contact with Kobs's clients for one year after leaving the

firm would have prevented her from recapturing Fidelity's business. While perhaps probative, other evidence lends credence to Cole's damages claim. First, Cole testified at deposition that her key contact at Fidelity had stopped returning her telephone calls in January 1993, while she was still employed at Kobs, as a result of defendant's strategy to undermine her credibility and transfer the account to DiLorenzo. *Id.* at 55; Affidavit of Patricia Cole, sworn to on Feb. 28, 1996 (the "Cole Aff."), at ¶ 29. Second, plaintiff has come forward with evidence suggesting that it was routine industry practice not to solicit business from a former client for one year after leaving a firm, but that recapturing that business would be possible at some point thereafter. *See* Cole Aff. at ¶ 32.

■ As for Kobs's contention that Cole cannot prove any damage to her reputation in the direct market advertising industry, the Court again finds that issues of material fact abound. Thus, although it appears that Cole sought and obtained other employment after her termination, the trier of fact must determine whether damage to her reputation resulting from defendant's alleged scheme prevented her from receiving superior employment opportunities. Kobs's assertion that such damages are too speculative to ascertain fares no better in light of the similar measure of damages approved by the Second Circuit in *Stewart.* Here, as in *Stewart,* the plaintiff seeks to recover for the damage to her career path resulting from a former employer's alleged fraudulent inducement scheme. The mere fact that quantification of such losses may be difficult is not a bar to Cole's claim. For these reasons, defendant's motion for summary judgment dismissing the complaint for failure to present evidence of damages related to the alleged fraud is denied.[3]

### CONCLUSION

For the reasons set forth above, defendant's motion, pursuant to Federal Rule of Civil Procedure 56, for summary judgment

---

**3.** The Court has considered defendant's remaining arguments and finds them to be without merit.

dismissing the complaint is denied. The parties are directed to appear at a pretrial conference on May 8, 1996 at 2:00 p.m.

SO ORDERED.