**Danny LAM, Plaintiff,**

v.

**AMERICAN EXPRESS COMPANY, Defendant.**

**No. 02 Civ. 4591.**

United States District Court, S.D. New York.

May 23, 2003.

Etah nYork Leonard, New York City, for Plaintiff.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Danny Lam ("Lam") brings this action for compensatory and punitive damages alleging fraudulent inducement, breach of contract, and federal and state claims for national origin and age discrimination in violation of 42 U.S.C. § 1983, New York Executive Law § 296, New York Administrative Code § 8–107 and Labor Law § 198(1–a). Defendant American Express Company ("American Express") moves for the partial dismissal of Lam's claims pursuant to Rule 9(b) and Rule 12(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."). For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

This case is before the Court on a partial motion to dismiss. The material alle-

gations in Lam's Amended Complaint ("Complaint" or "Compl."), dated July 18, 2002, along with such reasonable inferences as might be drawn in Lam's favor are therefore taken as admitted for the purposes of this motion. *See Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985), *modified by,* 793 F.2d 457 (1986); *Murray v. City of Milford,* 380 F.2d 468, 470 (2d Cir.1967); *Carlucci v. Owens–Corning Fiberglas Corp.,* 646 F.Supp. 1486, 1488 (E.D.N.Y.1986).

American Express extended a formal offer of employment to Lam on May 15, 1998 to work in its CapitaFinance department. At the time that he received this offer, Lam was employed by AT & T Capital/Newcort Financial ("AT & T"), as head of a joint venture between AT & T and American Express (the "Joint Venture"). American Express's offer was expressly contingent upon: (i) Lam's waiver of any rights that he had under his severance agreement with AT & T (the "AT & T Severance Plan"), and (ii) the closing of a deal under which American Express purchased AT & T's interest in the Joint Venture. Lam accepted the employment offer, waiving his rights under the AT & T Severance Plan. American Express purchased AT & T's interest in the Joint Venture, finalizing Lam's employment with American Express under the terms of his employment agreement as set forth in the May 15, 1998 offer letter (hereinafter, the "Employment Agreement").

According to the Employment Agreement, Lam was hired as an at-will employee of American Express and was to receive $185,000 per year in salary, as well as the opportunity to participate in three employee incentive programs. First, American Express agreed to provide Lam with "a one time grant of stock options and a Performance Grant award" (hereinafter referred to as the "Portfolio Grant

Award"). Lam alleges that the Portfolio Grant Award would have resulted in a payment of $150,000 on the vesting date of March 1, 2001. Second, Lam was entitled to continue his participation in an annual bonus program, which Lam alleges guaranteed him a minimum of $79,600 per year (hereinafter, the "Annual Bonus Program"). Finally, Lam was offered participation in a Long–Term Incentive Plan ("LTIP") that allowed him to defer a portion of his annual salary to be paid back after being multiplied by certain "leverage factors" set by American Express ("Performance Deferral Program"). The terms and conditions of the incentive plans included under Lam's Employment Agreement are outlined in the Compensation and Benefits Summary and brochure, which was attached to the Employment Agreement (hereinafter, "Compensation and Benefits Summary").

Under the Performance Deferral Program, Lam had set aside $287,850 by March 2000. In or about May 2000, Lam received a payment from this program of $273,000. Disappointed with this amount, which was below his expectation of $407,000 based on the leverage factors in the Compensation and Benefits Summary, Lam requested an explanation as to how the sum was calculated. Richard Tambor ("Tambor"), a Senior Vice President for American Express Travel Related Services Company, Inc., a wholly-owned subsidiary of American Express, explained to Lam that the payment was determined through "managerial discretion". On October 13, 2000, before the Portfolio Grant Award or the Annual Bonus Program for that year vested, Lam was terminated from American Express without cause.

The Complaint also alleges that, as of the time of the filing of this action, Lam was not paid from October 7, 2000 through October 13, 2000—the day of his termi-

nation. Moreover, Lam complains that he was not paid for his accrued but unused vacation days, and that therefore $5,234.98 is owed to him on this account.

Lam also asserts a claim of discrimination based on his national origin and age. To this end, Lam sues under 42 U.S.C. § 1983, as well as New York Executive Law § 296, New York Administrative Code § 8–107 and Labor Law § 198.

American Express moves to dismiss from the Complaint Lam's first cause of action for fraudulent inducement, his second cause of action for breach of contract and his third cause of action for violation of 42 U.S.C. § 1983 *et seq.*

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

On a motion to dismiss pursuant to 12(b)(6) of the Fed. R. Civ. P., the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the pleader. *Leatherman v. Tarrant County Narcotics and Coordination Unit,* 507 U.S. 163, 165, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994). The issue that must be determined by the Court "is not whether a Plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

While it is only the Complaint and not factual assertions or evidence that is properly considered at this juncture, " '[t]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.' " *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)). In this case, therefore, in ruling on the instant motion to dismiss, the Court will consider the Employment Agreement, the Summary of Compensation and Benefits included as an addendum to the Employment Agreement, attached as Exh. A to the Affidavit of Tambor ("Tambor Aff."), dated September 10, 2002, and the 1996 AT & T Capital Corporation Leadership Severance Plan, attached as Exh. B to the Tabor Aff. The Employment Agreement is attached to the Complaint and the AT & T Severance Plan is incorporated by reference in the Complaint and integral to Lam's claims.

### B. *FRAUDULENT INDUCEMENT*

█ To prove fraud under New York law, " 'a plaintiff must show that: (i) the defendant made a material false representation; (ii) the defendant intended to defraud the plaintiff thereby; (iii) the plaintiff reasonably relied upon the representation, and (iv) the plaintiff suffered damage as a result of such reliance.' " *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 19 (2d Cir.1996) (quoting *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 153 (2d Cir. 1995)).

█ American Express argues that since the fraud claim is "brought alongside a breach of contract claim" Lam has the burden of distinguishing the two claims or the fraud claim fails as a matter of law. Lam argues that his fraud and breach of contract claims are mutually exclusive.

New York courts addressing this issue have enunciated seemingly conflicting doctrine. Some have held that a contractual obligation " 'made with a preconceived and undisclosed intention of not performing it, ... constitutes a misrepresentation' " for purposes of a fraud claim that is not duplicative of a contract claim. *See Deerfield Comm. Corp. v. Chesebrough–Ponds, Inc.*, 68 N.Y.2d 954, 510 N.Y.S.2d 88, 502 N.E.2d 1003, 1004 (1986) (quoting *Sabo v. Delman*, 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906, 908 (1987)); *see also Smehlik v. Athletes & Artists, Inc.*, 861 F.Supp. 1162, 1171 (W.D.N.Y.1994). Others have declared that "a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meets its contractual obligations." *Rocanova v. Equitable Life Assurance Society of the U.S.*, 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339, 634 N.E.2d 940 (N.Y.1994); *accord Caniglia v. Chicago Tribune–New York News Syndicate, Inc.*, 204 A.D.2d 233, 612 N.Y.S.2d 146, 147 (1st Dep't 1994); *Guterman v. RGA Accessories, Inc.*, 196 A.D.2d 785, 602 N.Y.S.2d 116, 117 (1st Dep't 1993); *see also Cougar Audio, Inc. v. Reich*, No. 99 Civ. 4498, 2000 WL 420546, at *6 (S.D.N.Y. April 18, 2000); *Papa's–June Music, Inc. v. McLean*, 921 F.Supp. 1154, 1162 (S.D.N.Y. 1996).

■ The Second Circuit has endeavored to resolve this apparent conflict, indicating that the latter line of cases represents the general principle, while the former are individual applications of this rule providing for certain exceptions:

> To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.

(*citing Deerfield*, 510 N.Y.S.2d 88, 502 N.E.2d at 1004) (other citations omitted). Accordingly, although the general rule is that a fraud claim can not be based solely on allegations that a party did not intend to perform a contract, there are three notable exceptions to this rule that permit bringing in tandem both a fraud and contract claim arising out of the same core events, relationship or transaction.

In this case, Lam alleges that American Express fraudulently induced him to accept the Employment Agreement by offering the incentive plans described above, knowing and intending, at the time the offer was made, that Lam would not receive the incentives he was offered. This claim is essentially an allegation that American Express intended, at the time of entering in into the Employment Agreement, not to fulfill its obligations under the agreement. Therefore, the Court must consider whether Lam's fraud claim can survive by falling into one of the three exceptions listed in *Bridgestone*.

■ The representations made to Lam concerning the incentives he was entitled to receive were delineated in the Employment Agreement, which was an at-will employment contract, as Lam concedes. An at-will employee does not have any claim of maintaining a fiduciary relationship with his employer and can be terminated at anytime. *See Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 432 (2d Cir.1995); *Budet v. Tiffany & Co.*, 155 A.D.2d 408, 547 N.Y.S.2d 81, 82 (2d Dep't 1989) (employer owes no fiduciary duty to at-will employee). Therefore, the first exception—a duty to an employee separate from the duty to perform under the contract—to the *Bridgestone* rule is not satisfied on the facts pleaded by Lam.

Furthermore, since Lam was an at-will employee, to the extent that he alleges that representations were made to him concerning the incentive plans promising actual receipt of the incentives—collateral to American Express's explicit right in the Employment Agreement to terminate Lam at any time before an incentive vests—such allegations fail as a matter of law because they contradict the clear representations made within the Employment Agreement itself. *See Clifton v. Vista Computer Services, LLC,* No. 01 Civ. 10206, 2002 WL 1585550, at \*3, \*4 (S.D.N.Y. July 16, 2002) ("When a promise is not extraneous to the terms of the contract, a plaintiff with this level of business sophistication cannot make out a claim that he reasonably relied on those promises."); *Republic Nat'l Bank v. Hales,* 75 F.Supp.2d 300, 315 (S.D.N.Y.1999), *aff'd, HSBC Bank v. Hales,* 4 Fed.Appx. 15 (2d Cir.2001) ("Under New York law, reasonable reliance is precluded when 'an express provision in a written contract contradicts a prior alleged oral representation in a meaningful fashion.' ") (quoting *Villa Marin Chevrolet v. General Motors Corp.,* No. 98 Civ. 6167, 1999 WL 1052494, at \*5 (E.D.N.Y.Nov.18, 1999) and *M.H. Segan L.P. v. Hasbro, Inc.,* 924 F.Supp. 512, 527 (S.D.N.Y.1996)). Lam can not claim, and does not claim, that he did not understand that the Employment Agreement governed the financial terms of his employment with American Express, or that he could be fired at any time, thereby ending his rights to continued benefits under the Employment Agreement; these are the plain terms of the contract.

In other words, as alleged in the Complaint, the promise of incentives can not be considered separate and apart from the Employment Agreement itself. *See Schare v. Six Flags Theme Parks,* No. 96 Civ. 9377, 1998 WL 24361 (S.D.N.Y. January 23, 2998) (promise to pay commissions does not extend beyond the promise to perform under the contract); *International Cabletel Inc. v. Le Groupe Videotron Ltee,* 978 F.Supp. 483, 488 (S.D.N.Y.1997) ("To describe plaintiff's claim is to expose its fundamental flaw. Defendant's promise to negotiate exclusively with plaintiff plainly was not collateral to the [contract], it was memorialized in that agreement as defendant's principle obligation. Thus, defendants' allegedly false statements of future intent cannot support the present cause of action."); *See also Grappo,* 56 F.3d at 434. Therefore, the second possibility for bringing a fraud claim based on the same core events or transaction as a contract claim, as delineated in *Bridgestone,* 98 F.3d at 20—demonstrating a fraudulent misrepresentation collateral or extraneous to the contract—is not satisfied here.

However, an at-will employee can maintain a fraud claim when the injuries and resulting damages alleged are distinct from the effects of termination or failure to perform the terms of the employment contract. *See Stewart v. Jackson & Nash,* 976 F.2d 86, 88 (2d Cir.1992); *Doehla v. Wathne, Ltd.,* No. 98 Civ. 6087, 2000 WL 987280, at \*4 (S.D.N.Y. July 17, 2000); *Garnier v. J.C. Penney Co. Inc.,* 863 F.Supp. 139, 143 (S.D.N.Y.1994). This distinction also allows Lam to bring his fraud claim simultaneously with his contract claim, although based on the same course of events, under the third exception in *Bridgestone,* 98 F.3d at 20: "special damages that are caused by the misrepresentation and unrecoverable as contract damages." *See also Jelks v. Citibank N.A.,* No. 99 Civ. 2955, 2001 WL 50891, at \*3 (S.D.N.Y. Jan.22, 2001) ("Since the Second Circuit's seminal decision in *Stewart,* courts have upheld claims for fraudulent inducement where the injury alleged stems from leaving a former place of employment

or agreeing to remain in a compromised position at a current place of employment, rather than from the termination itself or failure to perform terms of the employment agreement"). Damages under a claim of fraudulent inducement are proper and distinct from contract damages insofar as they provide " 'indemnity for [the] loss suffered through that inducement.' " *Deerfield*, 510 N.Y.S.2d 88, 502 N.E.2d at 1004 (quoting *Sager v. Friedman*, 270 N.Y. 472, 1 N.E.2d 971, 974 (1936)).

In this case, Lam asserts that, based on American Express's representations concerning the incentives. he would receive, which representations he alleges American Express knew to be untrue at the time they were offered, he waived his rights to severance benefits from AT & T—benefits that he would not be entitled to recover as ordinary damages under a breach of contract claim, nor does Lam allege damages for his waived severance benefits under his breach of contract claim. *See Deerfield*, 510 N.Y.S.2d 88, 502 N.E.2d at 1004 (upholding a fraudulent inducement claim brought alongside a breach of contract claim where damages sought were not duplicative). In reply to this claim, American Express argues that Lam does not have any recoverable rights under the AT & T Severance Plan. American Express points to a paragraph of the AT & T. Severance Plan that provides:

> [I]n the event of a sale of a division or unit of the Company, such sale shall not result in an RIF Termination or an Other Eligible Termination with respect to any affected Participant, [ ] no such participant shall be eligible to receive the Severance Payments or benefits provided [ ] if, in the reasonable judgment of the Plan Administrator, such Participant is offered a comparable position with comparable compensation. with the acquiring or resulting company in the same general geographic area as such

Participant's then current position ("Comparable Position").

(AT & T Severance Plan ¶ 4.) Based on this provision, American Express argues that because Lam was offered a Comparable Position at American Express, he was not entitled to any payments under the AT & T Severance Plan.

American Express's argument is not dispositive of Lam's breach of contract claim, at this stage in the litigation, for two reasons. First, the Employment Agreement itself made explicit the necessity that Lam waive any rights he had to severance under the AT & T Severance Plan as a condition to Lam's acceptance of employment with American Express. (Employment Agreement at 1.) Therefore, it would seem contradictory for American Express to now assert that no such severance rights existed. Second, the AT & T Severance Plan does not definitively deny Lam severance benefits under the conditions presented in this case. Rather, a ruling would have to be made by the Plan Administrator as to whether AT & T offered him "Comparable Employment." Such a ruling is beyond the scope of the evidence before the Court for the purposes of the instant motion to dismiss. Furthermore, as an aside, although such representations are not properly before the Court at this time, Lam strongly contests American Express's assertion that the conditions of his employment at American Express were comparable to the conditions at AT & T and that he had no right to any severance benefits under the AT & T Severance Plan. (*See* Lam Affidavit ("Lam Aff."), dated November 4, 2002, ¶ 7; Lam Mem. at 13.) Therefore, the damages requested in Lam's fraudulent inducement claim may be found to be distinct from breach of contract damages and consequently justify a distinct fraudulent inducement claim.

■ In its Reply Memorandum of Law in Further Support of Defendant's Partial Motion to Dismiss ("Reply Mem."), American Express counters that even if distinct from contract damages, any losses Lam suffered by waiving his rights under the AT & T Severance Plan are not recoverable under a fraud claim because such damages amount to missed opportunity costs and not out-of-pocket losses. (Reply Mem. at 7–8.) " 'The true measure of damages is indemnity for the actual pecuniary loss sustained as the direct result of the wrong' or what is known as the out-of-pocket rule." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1373 (1996) (quoting *Reno v. Bull*, 226 N.Y. 546, 124 N.E. 144, 146 (1919) and *Hanlon v. Macfadden Publ.*, 302 N.Y. 502, 99 N.E.2d 546, 551 (1951)). In accordance with this rule, the proper measure of damages recoverable for fraud is the "difference between the value of the bargain which a plaintiff in a breach of contract claim was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain." *Sager*, 1 N.E.2d at 974.

Here, the severance benefits owed to Lam by AT & T under the AT & T Severance Plan were given up by Lam in consideration for the Employment Agreement; these benefits were not merely alternate opportunities not pursued by Lam, but were actual benefits to which he otherwise allegedly would have been entitled and which he waived in order to accept the Employment Agreement. Therefore, the Court disagrees with American Express's characterization of Lam's severance benefits from AT & T as mere missed opportunities. Moreover, the damages related to the waiver of the AT & T Severance benefits as alleged here are not "speculative and remote," which are the type of damages normally unrecoverable on a claim of fraud. *See Doehla*, 2000 WL 987280, at *6 (July 17, 2000); *Lama*, 646 N.Y.S.2d 76, 668 N.E.2d at 1374 (characterizing the damages claimed as "undeterminable and speculative").

Furthermore, the out-of-pocket rule is not as rigid as American Express contends. In *Stewart*, the Second Circuit upheld the plaintiff's right to sue in fraud for a "career development" injury suffered if the defendant fraudulently induced her to accept employment. 976 F.2d at 86. As applied in *Stewart*, the existence of recoverable damages for fraudulent inducement is fact-intensive and such damages can be awarded for losses suffered by an employee from leaving one place of employment after being fraudulently induced to accept another employment offer. *See Stewart*, 976 F.2d at 88; *Doehla*, 2000 WL 987280, at *8; *Jelks*, 2001 WL 50891, at *3; *Cole v. Kobs & Draft Adver., Inc.*, 921 F.Supp. 220, 224–26 (S.D.N.Y.1996); *Garnier*, 863 F.Supp. at 140–143. Therefore, in this case, damages based on Lam's waiver of his AT & T severance benefits, if such waiver was fraudulently induced, are recoverable under his fraudulent inducement claim.

Alternatively, American Express argues that Lam's fraudulent inducement claim should be dismissed because the Complaint does not identify any cognizable material misrepresentation or omission. The misrepresentation pleaded by Lam is that, at that time that American Express offered Lam participation in three employee incentive plans to induce him to accept the American Express offer, and compensate him for his agreement to waive his severance benefits due to him from AT & T and that, American Express knew that the representations concerning these incentive plans were false because American Express never intended to allow Lam to take advantage of the incentives promised in the Employment Agreement.

While it is undisputed that Lam, for various reasons, did not benefit from participation in the incentive plans specified in the Employment Agreement as he anticipated, at issue is whether, by reason of alleged wrongful conduct by American Express, the offer of employment embodied in the Employment Agreement represented a greater opportunity to participate in incentives than Lam actually received. In other words, as the Complaint is pleaded, Lam identifies no misrepresentations outside the scope of the terms and conditions offered in the Employment Agreement—*i.e.*, no promises expressed in conversations with any particular individuals at American Express, or other communications—that would have led him to understand the terms and conditions of his employment to be any other than those actually detailed in the Employment Agreement. Moreover, as explained above, as regards the salary and benefits offered to Lam, the Employment Agreement was intended to be a complete and integrated agreement, clear on its face and sufficient alone to convey the intent of the parties. Hence, Lam could not reasonably have relied on extraneous oral representations concerning the employment incentives as binding obligations separate and apart from the commitments made in the contract itself. Therefore, if any material misrepresentation was made to Lam concerning benefits owed to him, it must be manifested in the Employment Agreement.

To summarize, if the contract by its terms was fully complied with, then Lam alleges no material misrepresentations in the Complaint as pleaded.[1] However, if the Employment Agreement is found to offer Lam benefits that American Express at that time knew it did not intend to deliver, and in fact, American Express ultimately did not comply with the contractual obligations concerning such benefits, a fraudulent inducement claim can survive the motion to dismiss. Accordingly, the extent of the viability of Lam's fraudulent inducement claim will be considered together with the viability of his breach of contract claim.

Finally, American Express argues that Lam's fraudulent inducement claim should be dismissed because Lam failed to plead the claim with the particularity required to satisfy Fed.R.Civ.P. 9(b). Specifically, American Express points to Lam's failure to allege facts sufficient to show that

---

1. Lam argues that there were additional material misrepresentations committed by American Express in connection with Lam's employment, as outlined in the Affidavit of Danny Lam ("Lam Aff."), dated Nov. 4, 2002. However, on a motion to dismiss the Complaint, additional affidavits attesting to facts and particulars not in the Complaint are not appropriately considered. Similarly, in his Memorandum of Law; dated November 4, 2002 ("Lam Mem."), Lam includes additional factual information concerning oral representations from American Express executives Eileen Serra and Steven Alesio. Such representations are also not considered by the Court since they are not pleaded in the Complaint. A plaintiff cannot effectively amend his complaint by means of allegations and materials contained in papers generated in response to a motion to dismiss. *See* Fed R. Civ. P. 12(b); *Friedl v. City of New York*, 210 F.3d 79, 83 (" '[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion,' " a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material.' ") (quoting *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir.1988)); *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 99 civ. 3227, 2000 WL 1448635, at *1 n. 1 (S.D.N.Y. Sept.28, 2000).

American Express never intended to act upon the contract.

■ In circumstances such as those alleged here, scienter can be averred generally, although some factual basis for the intent must be demonstrated. *See Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987) ("Although Rule 9(b) provides that intent and 'other conditions of mind' may be averred generally, plaintiffs must nonetheless provide some factual basis for conclusory allegations of intent.") Given the difficulty of proving the defendant's state of mind, in particular at the early stages of a litigation, the intent element may be sufficiently demonstrated by specifying a motive for the defendant to commit fraud, *i.e.*, that the defendant benefitted from the alleged fraud, and had a clear opportunity to commit fraud. *Id.* (citing *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir.1985)); *see also USA Certified Merchants v. Koebel*, 262 F.Supp.2d 319, 332 (S.D.N.Y. May 14, 2003).

Here, although the Complaint does not demonstrate the benefit American Express gained by making the alleged misrepresentation to Lam—it only indicates that the waiver was a condition to the Employment Agreement, implying that American Express had some interest in securing it—the Lam Affidavit does clearly explain the potential benefit to American Express in ¶ 6: "As part of the purchase transaction, American Express was required to secure a waiver of the severance benefits to which

I was entitled under the executive plan." The Court will therefore allow Lam twenty days to amend the Complaint to cure the deficiency by reciting this or other pertinent factual allegations in his fraudulent inducement claim.[2] On this basis, Lam's claim may be fairly construed to assert that American Express's offer of employment presented an opportunity to promise Lam certain benefits, inducing him to waive the rights to severance under the AT & T Severance Plan, with the intent not to honor the benefits promised.

The New York state cases cited by American Express do not contradict this rule of law, but only state generally the undisputable principle that factual assertions must support the intent aspect of a claim of fraud. *See Lanzi v. Brooks*, 54 A.D.2d 1057, 388 N.Y.S.2d 946, 947–948 (3rd Dep't 1976); *Abelman v. Shoratlantic Dev. Co., Inc.*, 153 A.D.2d 821, 545 N.Y.S.2d 333, 334 (2d Dep't 1989). Moreover, in *Lanzi*, 388 N.Y.S.2d at 948, the court refers to a case where *present* intent is lacking: "Absent a present intent to deceive, a statement of future intentions, promises or expectations is not actionable on the grounds of fraud." Here, Lam alleges that at the time American Express made an offer of employment to him, it already harbored the wrongful intent to deny him the benefits it had offered as an employment inducement. American Express's cite to *Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d 435, 529 N.Y.S.2d 777, 779 (1st Dep't 1988), is also misplaced

---

2. If Lam does not amend the Complaint to include any such sufficient factual allegation, the fraudulent inducement claim would have to be dismissed for failure to plead with the requisite particularity in accordance with Fed.R.Civ.P. Rule 9(b). Assuming that this allegation is included in the Complaint within twenty days, the fraudulent inducement claim would survive a motion to dismiss. In order to conserve the Court's time and resources, the Court will include in this Decision and Order further analysis of the viability of Lam's fraudulent inducement claim, assuming that the specified amendment to the Complaint is properly made. *cf. Nakano v. Sadock*, No. 98 Civ. 0515, 2000 WL 680365, at *8 (S.D.N.Y. May 25, 2000) (presuming incorporation of additional factual information in complaint for purpose of deciding a summary judgment motion).

since the case merely articulates the propriety of basing a fraud claim on an intent not to perform under a contract, as opposed to a breach of contract claim, an issue the Court has already addressed above.

## C. BREACH OF CONTRACT

■ American Express argues that Lam's second cause of action for breach of contract fails as a matter of law because Lam does not allege that American Express breached any of the contractual provisions in the Employment Agreement. In addition, as indicated above, Lam's fraudulent inducement claim is inextricably interlinked with his breach of contract claim, which also can not survive if in fact American Express has fulfilled all its obligations under the Employment Agreement. Lam contends that his Employment Agreement was breached by American Express because he was not properly paid the amount agreed upon under the Compensation Deferral Program purportedly by reason of "managerial discretion" and because he was denied benefits due to him under the Portfolio Grant Award when he was terminated without cause prior to the vesting of that benefit. Lam does not allege a breach of contract as to the Annual Bonus Award; and therefore, any claims regarding the Annual Bonus Award, and any damages resulting therefrom, can not lie either under Lam's fraud claim or contract claim.

■ In order to state a claim for breach of contract under New York law, a plaintiff must allege: (i) existence of an agreement; (ii) adequate performance of the contract by the plaintiff; (iii) breach of material contract provisions by the defendant; and (iv) damages. *See Tagare v. NYNEX Network Sys. Co.*, 921 F.Supp. 1146, 1149 (S.D.N.Y.1996); *Reuben H. Donnelley Corp. v. Mark 1 Marketing Corp.*, 893 F.Supp. 285, 290 (S.D.N.Y.

1995). Accordingly, if as a matter of law American Express did not breach the contract provisions of the Employment Agreement, no breach of contract claim is properly alleged.

Lam's breach of contract claim for being terminated prior to the vesting of the Portfolio Grant Award can not be proven as alleged in the Complaint and therefore must be dismissed as a matter of law. The Employment Agreement, having no definite time as to duration, "is subject to be terminated at the will or pleasure of either of the parties, upon giving a reasonable notice to the other." *Waldman v. Englishtown Sportswear Ltd.*, 92 A.D.2d 833, 460 N.Y.S.2d 552, 555 (1st Dep't 1983) (citing 22 N.Y. Jur.2d *Contracts* § 424 (1982)); *Horowitz v. LaFrance Indus.*, 274 A.D. 46, 79 N.Y.S.2d 794, 796 (1st Dep't 1948). Lam admits that the Employment Agreement was an at-will contract, provision for which is explicitly included in the contract: "Your employment at America Express CapitaFinance will be at-will and either you or American Express CapitaFinance can terminate the employment relationship at any time, without cause." (Employment Agreement ¶ 13.) With regard to the Portfolio Grant Award, Lam admits that he failed to receive the benefit because he was terminated before it vested in March of 2000 (Compl.¶ 23), which termination was permissible by contract. Lam does not make any allegations in the Complaint as to why he should have received the Portfolio Grant Award despite the permissible termination, besides its inclusion in the Employment Agreement, and in fact refers back to the inducement claim to justify any damage from this benefit. (Compl.¶ 56.) Therefore, Lam can not demonstrate facts to prove breach of contract as to this benefit.

■ The Compensation Deferment Program presents a distinct problem.

Lam alleges that he had set aside $278,850 from his salary under the Compensation Deferment Program as of the time when he was to be paid out under the program. Rather than receiving the amount he expected, $407,000, based on the leverage factors listed in the Summary of Compensation and Benefits, Lam received only $273,000, less than he originally deferred from his salary, with no accounting for interest or inflation. In essence, as alleged, Lam lost money by participating in the Compensation Deferment Program. It was explained to Lam that he received this reduced amount based on "managerial discretion." American Express argues that the terms of the Compensation Deferment Program as offered to Lam permitted such reductions based on "managerial discretion" because American Express retained the right to modify the incentives at its discretion.

■ It is well settled that a promise to pay incentive compensation is unenforceable if the written terms of the compensation plan make clear that the employer has absolute discretion in deciding whether to pay the incentive. *O'Shea v. Bidcom, Inc.,* No. 01 Civ. 3855, 2002 WL 1610942, at *3 (S.D.N.Y. July 22, 2002); *Culver v. Merrill Lynch & Co., Inc.,* No. 94 Civ. 8124, 1995 WL 422203, at *3 (S.D.N.Y. July 17, 1995); *Namad v. Salomon Inc.,* 74 N.Y.2d 751, 545 N.Y.S.2d 79, 543 N.E.2d 722 (1989). Discretion to modify or cancel an incentive must, however, be explicit; it will not be implied if there exists no explicit contractual provisions assigning the employer absolute discretion to pay such compensation. *O'Shea,* 2002 WL 1610942, at *3. Furthermore, the rule in New York is that such absolute discretion must be retained unambiguously. *See Namad,* 545 N.Y.S.2d 79, 543 N.E.2d at 722 ("bonus clause unambiguously vests discretion ...

in defendants' management."); *Valentine v. Carlisle Leasing Int'l,* No. 97 Civ. 1406, 1998 WL 690877, at *3 (N.D.N.Y. Sept. 30, 1998); *Foss v. Am. Tel. & Telegraph Co.,* 199 A.D.2d 668, 605 N.Y.S.2d 143, 144 (3rd Dep't 1993) (discretion existed where employer reserved the right to "reduce, modify, or withhold compensation based on ... management determination of special circumstances at any time for any reason without prior notice.") In *Culver,* for instance, defendant's management attested that the compensation plan at issue was completely discretionary and contained a clause indicating that "Distribution of pools will be determined by the Division Director and Group Manager, with input from Trading Desk Mangers." 1995 WL 422203, at *3. Despite this claim, the court held that the "magic words" unambiguously vesting absolute discretion were lacking. *Id.*

■ On the other hand, if such absolute discretion is lacking, and if the incentive plan "constitutes a term of employment and 'there exists a reasonable basis for calculating the [incentive] due an employee, a court may enforce the contract term.'" *Canet v. Gooch Ware Travelstead,* 917 F.Supp. 969, 985 (E.D.N.Y.1996) (citing *Giuntoli v. Garvin Guybutler Corp.,* 726 F.Supp. 494, 508 (S.D.N.Y. 1989)).

Here, the Summary of Compensation Benefits contains a general reservation of rights, at the top of each page, indicating that

> This summary information is subject to required Compensation and Benefits Committee approval and governing plans and documents, as in effect from time to time. There is no assurance that the illustrated performance or payouts in this exhibit will actually occur.

By including this disclaimer in the Summary of Compensation Benefits, American Express allows itself discretion to adjust the incentive plans based on the Compensation and Benefits Committee's approval and undefined governing plans and documents. However, the disclaimer does not provide for general managerial discretion to reduce, without explanation of any basis whatsoever, individual incentive plan payments described in the Employment Agreement. Similar to the facts presented in *O'Shea*, this disclaimer contemplates that an adjustment could "be carried out in accord with the Plan's terms and conditions [here, 'governing plans and documents'], and not simply at [American Express's] discretion." 2002 WL 1610942, at *4.

▪ American Express also points to the Employment Agreement itself, which similarly states, with regard to the Compensation Deferment Plan specifically:

> You will continue to participate in the CapitaFinance Long-Term . . . and Annual Incentive Plans, and the incentive guidelines dictating the value of your awards will continue through the 1999 plan year under the Plans' current terms, subject to the right of American Express to modify the Plans to ensure alignment with business goals, objectives and measures.

(Employment Agreement ¶ 4.) This clause also provides that some adjustment to the benefits guidelines can be made but at the overall plan level, not on an individual basis with absolute discretion—the provision specifically refers to the right "to

modify the Plans". To the extent that American Express intended this provision to give managers unfettered discretion over all plan benefits for individual employees, it does not do so unambiguously and can not be upheld by the Court to be construed as such.

Furthermore, it is not clear to the Court how and why Lam's deferred compensation was actually reduced; nothing in the Summary of Compensation and Benefits guidelines for "CapitaFinance 1997–9 LTIP" provides for such a reduction, but only varied leverages.

Therefore, at this stage in the proceedings, without demonstration by American Express as to the contractual basis for making the alleged modifications in the Deferred Compensation Plan,[3] the Court must deny the motion to dismiss as to Lam's breach of contract claim with respect to the Deferred Compensation Plan.

## D. SECTION 1983 CLAIM

With regard to Lam's third cause of action pursuant to 42 U.S.C. § 1983 *et seq.*, Lam concedes the impropriety of the pleading, based on the fact that there is no state action alleged in the Complaint, and requests an opportunity to amend the Complaint to correct this inadvertent error and replead on the basis of 42 U.S.C. § 1981. *See* Lam Mem. at 1 n. 1. The Court dismisses Lam's § 1983 claim and will allow Lam to replead this cause of action under § 1981 within twenty days of the date of this Decision and Order.

---

3. Lam makes the curious argument that modification of the Deferred Compensation Plan, in accordance with ¶ 4 of the Employment Agreement, would constitute a new term of employment for Lam, entitling him to notice. (*See* Lam Mem. at 18.) Although the Court denies American Express's motion to dismiss this claim on other grounds, the Court is not persuaded by this argument since the right to modify the incentive plans, on a global level in accordance with "business goals, objectives and measures" is part of the Employment Agreement itself. Moreover, Lam's argument that parol evidence can be used to interpret this provision of the Employment Agreement is not properly established.

### E. *LEAVE TO AMEND THE COMPLAINT*

By letter, dated Nov. 4, 2002, from Neal Brickman, counsel for Lam, Lam requests leave to amend the complaint based on the new facts already discovered in this case as delineated in the Lam Affidavit. However, excluding the amendment noted above that will be permitted by the Court with regard to American Express's incentive to fraudulently induce Lam into waiving his severance benefits under the AT & T Severance Plan, Lam does not set forth the particulars of how he wishes the Complaint to be amended and the basis or need for such amendments. With regard to any alleged ambiguity in ¶ 4 of the Employment Agreement, (Lam Aff. ¶ 8; Lam Mem. at 18), the Court will consider testimony with regard to oral communications made to Lam explaining this provision (Lam Aff. ¶ 8), in the course of later proceedings or motions, only to the extent the Court finds the Employment Agreement to be ambiguous and in accordance with the parol evidence doctrine. Moreover, the Court denies any attempt by Lam to amend the Complaint to include his reliance on extraneous oral representations by executives of American that are clearly contradicted and/or superceded by the Employment Agreement with regard to Lam's fraudulent inducement claim or his breach of contract claim. (*See* Lam Aff. ¶¶ 7(3), ¶ 8.) As noted above in part II.B in detail, such reliance would be unreasonable, and therefore any such amendment is rejected as a matter of law as futile. *See Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) (when there is no merit in proposed amendments, leave to amend should be denied); *Friedman v. Chesapeake & Ohio Ry. Co.*, 261 F.Supp. 728, 734 (S.D.N.Y.1966), *aff'd*, 395 F.2d 663, 664 (2d Cir.1968); *Yaba v. Cadwalader, Wickersham & Taft*, 931 F.Supp. 271, 274 (S.D.N.Y.1996) (denying leave to amend where new claims are futile).

Beyond amending the third cause of action in the Complaint to substitute a § 1981 claim for the § 1983, the fraudulent inducement claim to include a factual basis for American Express's incentive to induce Lam to waive his severance benefits, and the Court's indication with regard to the interpretation of the Employment Agreement, to the extent that Lam believes it is still necessary, after the ruling contained in this Decision and Order to amend the Complaint, and to the extent the parties can not agree upon any such amendments, Lam must seek leave to amend the Complaint. Such request must state the specific amendments he seeks, and address the meritoriousness of the amendments, pursuant to Rule 15 of the Fed. R. Civ. P and the Court's Individual Rules.

### III. *ORDER*

For the reasons described above, it is hereby

**ORDERED** that Lam's first cause of action for fraudulent inducement is dismissed, with leave to amend this cause of action within twenty days to incorporate sufficient factual allegations supporting American Express's intent to defraud, such as that set forth in ¶ 6 of the Lam Affidavit; and it is further

**ORDERED** that Lam's second cause of action for breach of contract, and, to the extent that it survives upon amendment, the first cause of action for fraudulent inducement be dismissed with regard to American Express's failure to pay the Annual Bonus Award and Portfolio Grant Award, as those terms are defined herein; and it is further

**ORDERED** that Lam is given twenty days to amend the third cause of action in the Complaint to replace the 42 U.S.C.

§ 1983 claim currently alleged with a § 1981 claim; and it is further

**ORDERED** that the parties attend an initial conference on May 30, 2003 at 11:45am; and it is finally

**ORDERED** that the parties bring a completed Case Management Plan (form enclosed) to the conference. The Case Management Plan must provide that discovery is to be completed within three months unless otherwise permitted by the Court.

**SO ORDERED.**