**Michael L. PASTERNAK, Plaintiff,**

v.

**DOW KIM, Defendant.**

**No. 10 CV 5045(DC).**

United States District Court,
S.D. New York.

Aug. 14, 2013.

Holman Law, P.C. by Thomas A. Holman, Esq. and McCallion & Associates LLP by Kenneth F. McCallion, Esq., New York, NY, for Plaintiff.

Cole, Schotz, Meisel, Forman & Leonard, P.A. by Leo V. Leyva, Esq., Jed M. Weiss, Esq., New York, NY, for Defendant.

### AMENDED MEMORANDUM DECISION *

CHIN, Circuit Judge:

Before the Court is defendant Dow Kim's motion to preclude plaintiff Michael L. Pasternak from calling Stephanie Plancich, Ph.D., as an expert witness at trial. Dr. Plancich would testify that Pasternak suffered lost income of some $8.65 million for the period from September 4, 2007 through September 30, 2011. (Plancich Report at 6). As calculated by Dr. Plancich, most of that amount—$6.8 million (PX 168)—consists of bonus compensation that Pasternak would have received over approximately four years, had he accepted an offer from Morgan Stanley Investment Inc. ("Morgan Stanley"). (*See* PX 2).

Plancich assumed that Pasternak would have remained at Morgan Stanley for approximately 4.1 years, based on his prior work experience and the "typical experience of other Managing Directors in the Fixed Income Division at Morgan Stanley." (Plancich Report at 3). Plancich then assumed that Pasternak would receive bonus compensation in each of the four years equal to the bonus he would have received for the prior year (beginning with the bonus of $1.5 million guaranteed for the first year), adjusted upwards or downwards by a percentage drawn from the annual return of the Merrill Lynch U.S. High Yield Master II Index, which ranged from –26.4% to 57.5% from 2008–2011. In other words, for example, the index for 2008 was –26.4%; hence, to cal-

---

* This Amended Memorandum Decision supersedes the Memorandum Decision in this case dated August 9, 2013.

culate Pasternak's bonus for 2008, Plancich multiplied the prior year's bonus ($1.5 million) by 26.4% and deducted that amount ($396,000) from the prior year bonus ($1.5 million − $396,000 = $1,104,000). (*See* PX 168).[1] To calculate the 2009 bonus, Plancich took the 2008 bonus ($1,104,000) and adjusted it by the annual return of the index for 2009 (57.5%) to calculate a bonus of $1,738,800. And so on.

█ I held a *Daubert* hearing on August 7, 2013. Plancich testified and explained the above calculations. She was unable to provide concrete support for her method of calculating Pasternak's anticipated bonus had he accepted Moran Stanley's offer—taking the prior year's bonus and adjusting it upwards or downwards for that year in accordance with that year's performance of a general index of securities.

Kim's motion is granted, at least in part. I will not permit Plancich to testify to the above bonus calculation for both factual and legal reasons.

█ First, as a factual matter, Plancich's damages methodology is not based on a reliable foundation. To be admissible, expert testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). As the Court explained in *Daubert*, the trial judge's task is to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597, 113 S.Ct. 2786. Pasternak has not shown that Plancich's damages theory is "based on sufficient facts or data" or that it is "the product of reliable principles and methods." Fed.R.Evid. 702. Plancich has offered no support for the notion that in the investment banking field, the change in discretionary bonus compensation from year to year will track the change in annual performance of a particular fund or portfolio or, for that matter, a general index, starting with a base of a bonus guaranteed for the first year. Plancich has never been employed in the investment banking field, has never participated in a determination of discretionary bonus compensation, and was unable to cite any study or authority to show that discretionary bonuses are calculated in this way.[2]

To the contrary, the materials submitted by Pasternak provide no support for Plancich's methodology. If anything, they show that, while bonuses usually are awarded, it is possible that in extraordinary circumstances a bonus would not be given and, more importantly, that the amount of bonuses will vary. The deposition of James David Germany makes clear, for example, that while there was an expectation of a bonus, it was certainly a possibility that a Morgan Stanley employee in the fixed income group would not receive a bonus. (*See* Germany Dep. at 59:8–10 ("If one did not receive a bonus that is a very clear signal that you don't

---

**1.** Plaintiff's Exhibit 168 has slightly different, inflation-adjusted numbers, *e.g.*, $1,104,162 instead of $1,104,000. (*See* Plancich Report at 6 n. 18).

**2.** An expert opinion is inadmissible if it "is connected to existing data only by the *ipse dixit* of the expert," for a "court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *accord* Fed.R.Evid. 702 advisory committee's note (2000 Amendments) ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir.1995))). *See also Lippe v. Bairnco Corp.*, 288 B.R. 678, 689 (S.D.N.Y.2003) (granting motion to exclude expert witnesses where their testimony, *inter alia*, was "based solely on their say-so").

have much time left at Morgan Stanley.")). Likewise, the Germany declaration, submitted by Pasternak after the hearing, makes clear that bonuses were not paid in the rigid fashion suggested by Plancich; Germany explains that bonuses varied, the amount of a bonus was discretionary, and the size of a bonus "would depend on the performance of the portfolio manager, the group he or she was a part of, and the firm." (Germany Decl. ¶¶ 7, 8, 9).

In his post-hearing submission, Pasternak also provided a number of articles that undercut the reliability of Plancich's methodology. Indeed, the first article declares: "The sums that continue to be spent by Wall Street firms on payroll, payoffs and, most controversially, bonuses appear to bear no relation to the losses incurred by investors in the banks." (8/8/2013 Letter from Holman Law to the Court, at 7 & Ex. A). Again, while these materials demonstrate that bonuses were paid even in poor-performing years, the articles underscore the discretionary nature of these bonuses, and none of the materials suggests that bonuses are tied on a percentage basis solely to the annual return of a particular portfolio, fund, or index.

Plancich's methodology essentially converts the discretionary bonuses into guaranteed bonuses, that is, the prior year's bonus (beginning with the $1.5 million bonus guaranteed for the first year) adjusted upwards or downwards on a percentage basis tied to the performance of the index. It is apparent that discretionary bonuses at Morgan Stanley were not determined on such a rigid basis. While I accept the notion that Pasternak would have received some bonus even in years in which his

group suffered a substantial loss, surely Morgan Stanley would have taken into account, in addition to the performance of Pasternak's portfolio, *inter alia,* how the group performed, how the firm performed overall, how Pasternak performed individually, how long Pasternak had been with the firm, and his compensation history at the firm. None of these factors are accounted for in Plancich's analysis. Hence, Plancich's proposed testimony as to bonus compensation lacks a reliable foundation.

 Second, the damages theory is also flawed legally. In New York, damages in fraud cases are limited by the "out-of-pocket rule," which provides that plaintiffs in fraud cases may only recover damages "for what they lost because of the fraud, not ... for what they might have gained.... Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud." *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996); *accord Kregos v. Associated Press,* 3 F.3d 656, 665 (2d Cir.1993) ("New York law awards only 'out-of-pocket' expenses in fraud cases, entitling plaintiffs to damages solely for their actual pecuniary losses.... These losses must be the direct, immediate, and proximate result of the misrepresentation.... The damages must also be independent of other causes." (citations omitted)). The rule has been widely applied to fraudulent inducement claims in the employment context to preclude expectation damages, *i.e.,* the type of income Pasternak claims he would have earned had he accepted alternative employment with Morgan Stanley.[3]

3. *See, e.g., Rather v. CBS Corp.,* 68 A.D.3d 49, 886 N.Y.S.2d 121, 127 (1st Dep't 2009) ("The loss of an alternative contractual bargain cannot serve as a basis for fraud or misrepresentation damages because the loss of the bargain was 'undeterminable and speculative.'" (alteration, omission, and quotation omitted)); *Hoeffner v. Orrick, Herrington & Sutcliffe LLP,* 61 A.D.3d 614, 878 N.Y.S.2d 717, 718–19 (1st Dep't 2009) (plaintiff's "damages may not include any amount based on continued employment with the other firm, since the dura-

Here, Pasternak would have been an at-will employee at Morgan Stanley, and after the first year the bonuses were completely discretionary. (See PX 2). His claim for damages for loss of the bonuses he anticipated earning at Morgan Stanley assumes that (1) he would have accepted Morgan Stanley's offer, (2) he would have continued to be employed there for 4.1 years, (3) he would have performed at a level that warranted bonus compensation, and (4) Morgan Stanley was in a position to award bonuses all 4.1 years. Even assuming a reasonable jury could find all of these facts, the amount of the bonuses still would be undeterminable and speculative. Accordingly, I hold that Pasternak's claim for bonus compensation is precluded by the out-of-pocket rule, at least to the extent of discretionary and unvested bonus compensation.

Pasternak makes a number of arguments in this respect. First, he argues that Kim raised the out-of-pocket rule in his summary judgment motion and that Judge Swain denied the motion, finding issues of fact with respect to, *inter alia*, damages. (8/8/2013 Letter from Holman Law to the Court, at 2). I do not read Judge Swain's order as rejecting the appli-

cation of the out-of-pocket rule to the claim for discretionary bonus compensation. There may be issues of fact as to damages, but not in this respect. While I do not want to re-litigate the summary judgment motions, it seems to me that this legal question, raised in the context of a motion *in limine*, should be resolved now.

Second, Pasternak seeks to distinguish *Lama Holding Co., Hoeffner, Rather,* and *Geary.* The effort fails. While there certainly are differences between those cases and the instant one, the cases clearly stand for the proposition that in a fraud case a plaintiff may not recover expectation damages. A plaintiff may only recover "what [he] lost because of the fraud, not ... what [he] might have gained." *Lama Holding Co.,* 88 N.Y.2d at 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370.

Third, Pasternak relies on several federal cases that seem to take a broader view of New York law.[4] These cases are somewhat distinguishable as well. The plaintiffs in these cases were actually employed and thus there was a more concrete basis for determining damages. In contrast, here Pasternak was not employed and had been last employed as a principal in a

---

tion and success of his career with that firm are speculative"); *Geary v. Hunton & Williams,* 257 A.D.2d 482, 684 N.Y.S.2d 207, 207 (1st Dep't 1999) (holding that out-of-pocket rule "bars recovery of profits that would have been realized in the absence of fraud, including the loss of an alternative bargain overlooked in favor of the fraudulent one, as inherently speculative and undeterminable"); *see also Kwon v. Yun,* No. 05 Civ. 1142(GEL), 2006 WL 416375, at *11 (S.D.N.Y. Feb. 21, 2006) (holding, in fraudulent employment case, that "out-of-pocket" rule limits plaintiff's recovery "to 'what they lost' and does not allow recovery of 'what they might have gained' absent the fraud").

**4.** *See Stewart v. Jackson & Nash,* 976 F.2d 86, 88 (2d Cir.1992) (in fraudulent inducement case, terminated employee could recover

damages to career objectives and development as compensatory damages); *Kwon v. Yun,* 606 F.Supp.2d 344, 360–61 (S.D.N.Y. 2009) (collecting cases and holding both "loss of professional opportunity and reputation, and loss of benefits flowing from one's previous *employment* are all cognizable losses in employment-related fraudulent inducement cases" (emphasis added)); *Lam v. Am. Express Co.,* 265 F.Supp.2d 225, 233 (S.D.N.Y. 2003) ("[T]he proper measure of damages recoverable for fraud [for terminated employee] is the 'difference between the value of the bargain which a plaintiff in a breach of contract claim was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain.'" (quotation omitted)).

hedge fund. More importantly, I do not believe that *Stewart, Lam,* and *Kwon* provide Pasternak with support for the damages claim in question here: anticipated discretionary bonus compensation that Pasternak claims he would have earned had he accepted the offer from Morgan Stanley and remained there for 4.1 years.

Finally, I note that Pasternak also stated a claim for negligent misrepresentation. The decision in *Lama Holding Co.,* however, makes no distinction between the damages recoverable in a claim for fraud and those recoverable in a claim for negligent misrepresentation. *See* 88 N.Y.2d at 421–22, 646 N.Y.S.2d 76, 668 N.E.2d 1370; *see also In re Optimal U.S. Litig.,* 837 F.Supp.2d 244, 266 (S.D.N.Y.2011) (plaintiff's failure to allege out-of-pocket losses justified dismissal of negligent misrepresentation claim); *Creative Waste Mgmt., Inc. v. Capitol Environmental Servs., Inc.,* 495 F.Supp.2d 353, 361 (S.D.N.Y.2007) (affirming that "only out-of-pocket losses were recoverable on a claim for negligent misrepresentation"). Hence, the out-of-pocket rule applies to both the claim for fraud and the claim for negligent misrepresentation. *See Lama Holding Co.,* 88 N.Y.2d at 422, 646 N.Y.S.2d 76, 668 N.E.2d 1370 ("Further, the loss of an alternative contractual bargain ... cannot serve as a basis for fraud or misrepresentation damages because the loss of the bargain was undeterminable and speculative." (quotation and internal quotation marks omitted)).

To be clear, I am granting Kim's *in limine* motion only with respect to the claim for damages based on lost discretionary and unvested bonus compensation and other similar expectation losses. To the extent Pasternak can prove the type of damages deemed recoverable by the Second Circuit in *Stewart,* that is, actual as opposed to anticipated losses, the Second Circuit's decision, of course, controls.

### CONCLUSION

Kim's *in limine* motion to preclude the testimony of Dr. Plancich is granted to the extent set forth above.

SO ORDERED.